## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

**THEODORE L "TED" WHIDDEN,**       **CASE NO.:**

     **Plaintiff,**

**v.**

**LOUIS S. ROBERTS III, individually and
in his official capacity as Sheriff, Jackson
County, Florida, and LARRY BIRGE,
individually,**

     **Defendant.**

_____/

## COMPLAINT

Plaintiff, THEODORE L "TED" WHIDDEN, hereby sues Defendant, LOUIS S. ROBERTS III, individually and in his official capacity as Sheriff, Jackson County, Florida, and LARRY BIRGE, individually, and alleges:

### NATURE OF THE ACTION

1. This is an action brought under the common law of the State of Florida and for Constitutional violations brought through 42 U.S.C. §1983.

2. This is an action for damages in excess of Seventy Five Thousand Dollars ($75,000.00) exclusive of costs and interests. Jurisdiction of this Court is invoked pursuant 28 U.S.C. §1331 (federal question jurisdiction), 28 U.S.C. §1343 (civil rights claim jurisdiction) and 28 U.S.C. §1367 (supplemental jurisdiction).

## THE PARTIES

3.     At all times pertinent hereto, Plaintiff, THEODORE L "TED" WHIDDEN, has been a resident of the State of Florida and is thus *sui juris*.

4.     At all times pertinent hereto, Defendant, LOUIS S. ROBERTS III ("Defendant ROBERTS"), individually, has been a resident of the State of Florida and is thus sui juris.

5.     At all times pertinent hereto, Defendant, LOUIS S. ROBERTS III, in his official capacity as Sheriff of Jackson County ("Defendant Sheriff"), has been organized and existing under the laws of the State of Florida as a law enforcement agency.

6.     At all times pertinent hereto, Defendant, LARRY BIRGE ("Defendant Birge"), individually, has been a resident of the State of Florida and is thus sui juris. At all times alleged herein, Defendant Birge was employed by Defendant Sheriff.

## CONDITIONS PRECEDENT

7.     Written notices of intent to initiate litigation on Plaintiff's state law claims asserted herein, were timely submitted to Defendants pursuant to 768.28(6), Florida Statutes. Plaintiff has satisfied all conditions precedent to bringing this action, if any. This action is timely filed thereafter.

## STATEMENT OF THE ULTIMATE FACTS

8.      In or around March/April 2015, Plaintiff hired a woman, Jennifer

Nicole Wright Slay, for a temporary clean-up on some property temporarily owned

by him.  However, Ms. Slay, without Plaintiff's permission, moved into and

squatted on Plaintiff's property.

9.      Thereafter, Plaintiff discovered that Slay was violating Florida law by

producing and possessing illegal drugs on said property, specifically the

manufacturing of methamphetamine. Moreover, Slay was also requiring small

children on the property to defecate in buckets and carry it out to dump by the

fence. There was raw sewage in the yard due to plastics used in the drug

production being flushed down the toilet which caused plumbing to back up.

10.      After Plaintiff learned of the above, on May 7, 2015, Plaintiff posted a

trespass notice letter at the gate of his property and then left town to work in

Alaska.

11.      After Plaintiff posted the trespass notice, a representative for Slay,

who remained unidentified until approximately January, 2019, made a series of

phone calls to Plaintiff. The representative alleged to have connections and sway

with Defendant Sheriff and contended he would make problems for Plaintiff.

Moreover, the representative claimed he could block access to property involved in

the criminal drug operation. It has since been discovered that this representative for

3

Slay appears to have been Lieutenant Jeremy Tolbert, who is believed to be Slay's ex-husband and the father of the girl forced to carry the defecation buckets. Plaintiff has since reported Tolbert's actions to Defendant Sheriff with no corrective action.

12.     Plaintiff furnished this information regarding the drugs and child endangerment to Defendant Sheriff, the health department, and child protective services and made numerous attempts to have officers with Defendant Sheriff eject Slay from his (Plaintiff's) property. However, not only did Defendant Sheriff and/or his deputies refuse to trespass Slay, but one officer, Trevor Lee, specifically advised Slay that she could stay on the property. Moreover, Slay was not arrested for any criminal activity and no criminal charges were ever brought against her.

13.     After Plaintiff made the above referenced complaints, an officer with Defendant Sheriff contacted Plaintiff while he was out of town. Plaintiff contacted Defendant Sheriff twice in response to this communication. One contact was filed through Defendant Sheriff's Internet portal (website) which was promptly disabled shortly after Plaintiff's communication was received. His second communication was by email. In this communication, Plaintiff specifically reported that Slay was apparently manufacturing methamphetamines, may be abusing her children at the property, and squatting without right. Plaintiff promptly received a response from Head Deputy Donnie Branch.  Mr. Branch told Plaintiff that if Defendant Sheriff

4

needed anything further that they would be in touch with him. However, Defendant

Sheriff later alleged erroneously that Plaintiff did not contact anyone with

Defendant Sheriff in response to the first communications from Defendant Sheriff.

Plaintiff knew this to be a lie.

14.     Following Plaintiff's communication with Mr. Branch, a warrant for

Plaintiff's arrest was issued on May 21, 2015, while Plaintiff was still in Alaska.

The premise of the warrant stated that Defendant Sheriff failed to receive a

response from Plaintiff upon attempt to contact. However, Plaintiff was not in the

State of Florida during this time but had still responded to Defendant Sheriff

through email communications. Nevertheless, Defendant Sheriff continued to

contend that Plaintiff had not responded.

15.     Slay alleged under oath that she had been unlawfully removed from

Plaintiff's property and that Plaintiff had stolen her (Slay's) personal property off

the premise. However, this was all false. Upon information and belief, the warrant

was based on deceptions by Slay that were not accurately or adequately

investigated by Defendant Sheriff and that could have been easily verified by the

Defendant Sheriff prior to Plaintiff's arrest.  Specifically, there was no effort to

locate a lease, payments by Slay to Plaintiff for rent of the property or any other

reasonable and exculpatory evidence showing that Slay was in fact a squatter.

Nevertheless, Slay proceeded to have Defendant Sheriff issue Plaintiff an arrest

warrant for Grand Theft. Defendant Birge, the officer assigned to investigate the criminal charge alleged against Plaintiff, misled the court when advising no contact had been made with Plaintiff.

16.     Upon Plaintiff's return to Florida from his work in Alaska, on or around July 29, 2015, Plaintiff was arrested on the outstanding warrant for Grand Theft which was a contrived allegation by Defendant Birge.  The specific charge was the alleged Grand Theft through the denial by Plaintiff of access to Slay's property as Plaintiff was said to have placed a lock on a chain blocking access to his property.  At the time of his arrest, Plaintiff was driving his motor vehicle which was lawfully registered to him.  At that time, Plaintiff was told by Deputy Quinton Hollis that his arrest had been "directed" by Defendants Sheriff and Roberts.

17.     Upon placing Plaintiff under arrest, and removing him from the vehicle, the arresting officer seized several firearms which were owned by Plaintiff and which had been properly registered by him. Prior to removing firearms and other inventory items from the vehicle, Deputy Quinton Hollis "staged" a presentation that was created to form an illusion for the case. Specifically, Hollis staged firearms that Plaintiff had on his person to appear as though they were in the vehicle's seat to initiate the "open carry" charges.  Charges stemming from this arrest were in Case number 15-276CF for Grand Larceny for blocking a person

(Slay) access to their belongings, and 15-619MM alleging the open carry of firearms.  Plaintiff was transported to the Jackson County Jail on these charges.

18.     Plaintiff subsequently informed the deputies that the firearms were lawfully owned by him and further, that he had a current concealed weapons permit issued by the State of Florida. Nevertheless, the deputies took possessions of the weapons. Later, two (2) of the firearms were claimed to be taken for evidence and four (4) for safekeeping. Other inventory was removed from Plaintiff's vehicle; however, no receipt was ever offered for any removed items.

19.     Following his release from Jail on July 30, 2015, Plaintiff signed an agreement with the court, specifically Stacey Goodson, that he would be allowed to be present during any and all removals of property from his (Plaintiff's) estate. This was a condition of release. On July 31, 2015, Stacey Goodson telephoned Plaintiff and ordered him to unlock the gate at his property but did not explain the purpose of this request.

20.     Plaintiff responded promptly to avoid conflict and took the lock off the gate. This unlocking facilitated Defendant Sheriff's and Slay's access and removal of personal property from Plaintiff's property without any record of items being removed allegedly for Slay.  This unlocking also facilitated Defendant Sheriff and Slay to enter Plaintiff's property in violation of the agreed upon order in which Plaintiff would be present for the property removal.  Plaintiff was not

notified as to the time and date that Defendant Sheriff and Slay would be on the property and he was, consequently, not present when the property was removed. To this date, no inventory of the property existed at Plaintiff's property or removed therefrom has been maintained or provided to Plaintiff. Plaintiff filed numerous reports with Defendant Sheriff for its failure to comply with the court order. Specifically, Plaintiff alleged in his communications with Defendant Sheriff that it had violated the court order by not permitting him to be present when Defendant Sheriff and Slay were on the subject property.

21.     On or about November 2, 2015, the State Attorney in and for the Fourteenth Judicial Circuit, Jackson County, Florida, filed a document entitled "No Information" in case 15-619MM, dropping criminal charges against Plaintiff regarding his possession of the firearms. This occurred as a result of Plaintiff, through counsel, alleging that the firearms charge was an unlawful civil rights violation and that it was illegal for the Defendant Sheriff to retain his firearms under these circumstances.

22.     However, the firearms were not immediately released back to Plaintiff; instead, it took almost six (6) weeks, on or around December 10, 2015, for Plaintiff to secure the return of his firearms. Moreover, Plaintiff only received the firearms after filing a Florida Bar grievance against members of the State Attorney's Office to secure the return of his firearms. Specifically, the grievance

addressed the custom and practice of inventory and paperwork mismanagement while withholding personal property by Defendant Sheriff.

23.    Over the seven (7) months from July 2015 to February 2016, specifically February 26, 2016, when the Grand Theft charges were dismissed, Plaintiff's rights were continually and seriously violated.  During the course of the criminal prosecution of the Grand Theft charge, Plaintiff was alleged to be mentally impaired.

24.    Additionally, although Plaintiff had, at no time during the entire prosecution against him, ever been subjected to a court order in any form preventing him from entering into the Jackson County Courthouse, a picture of him which can only be characterized as a "wanted poster" was placed at the entrance of the Courthouse in or around December 2015.  Even after the prosecution was terminated, the "wanted poster" remained in that location, open to public view, for nine (9) months or more thereafter until around September 2016, despite the fact that Plaintiff had made written requests to the court to have it removed. The wanted poster included Plaintiff's social security number, phone number, date of birth, and other details. Moreover, the "wanted poster" remained in view so plain to the public that it could be observed from outside the Courthouse through the front door during both the day and night.  Some three (3) years later, although

Plaintiff was never actually restricted from entering the Courthouse, Plaintiff has been notified that a restriction to enter the building may still exist.

25.     Plaintiff's work prior to this unlawful arrest and detainment required international travel, security clearances, certifications, and a host of paperwork which was revoked as a result of the frivolous charges and malicious prosecution. As a result, Plaintiff has been barred from activity in his chosen profession. To this day, Plaintiff's arrest record and the effects of the wrongful prosecution have prevented him from finding suitable employment opportunities. Plaintiff has been notified by suitable employers that his file and application would not be accepted due to the long-standing effort of prosecution for criminal charges.  The reason cited is specifically listed as the charges referred to herein.

26.     Plaintiff has retained the undersigned to represent his interests in this cause and is obligated to pay a fee for these services.  Defendant should be made to pay said fee under the laws set forth above.

## COUNT I
## COMMON LAW FALSE IMPRISONMENT/ARREST
### (Brought by Plaintiff against Defendant Sheriff)

27.     Paragraphs 1 through 25 are hereby re-alleged and incorporated herein by reference.

28.     This is an action against Defendant Sheriff in his official capacity. This Count is pled in the alternative.  For the purpose of this count alone,

Defendant's Roberts, Birge and other employees/agents of Defendant Sheriff acted inside the course and scope of their employment with Defendant Sheriff.

29.     Plaintiff is entitled to relief against Defendant Sheriff in that he, through his employees and/or agents, intentionally and unlawfully detained and restrained the Plaintiff, when Plaintiff was unlawfully deprived of his liberty without any reasonable cause or color of authority and maintained such complete restraint and deprivation for a period of time.

30.     This unlawful restraint of the Plaintiff's liberty was also accomplished by Defendant Sheriff confining Plaintiff to an area in which the Plaintiff did not wish to be confined.

31.     Plaintiff was further restrained by Defendant Sheriff's use of coercive words and threats of force as well as actual force and immediate means of coercion against Plaintiff, so that the Plaintiff was restrained and deprived of liberty. Defendant Sheriff restrained Plaintiff without any justification and in the absence of probable cause.  Defendant conducted no independent investigation into whether any criminal conduct had occurred.

32.     At all times material to this action, and at all times during which Plaintiff was being unlawfully restrained, the Plaintiff was restrained against their will, and without consent, so that Plaintiff was not free to leave their places of confinement.

33.     As a direct and proximate cause of Defendant Sheriff's actions, Plaintiff has been damaged, which damages include: mental anguish, pain and suffering, bodily injury, loss of capacity for the enjoyment of life, embarrassment, humiliation, loss of reputation, lost employment opportunities, lost wages, and the loss of other emoluments.  These damages have occurred at present, in the past and will most likely occur in the future.  Defendants are jointly and severally liable to Plaintiff.

## COUNT II
### COMMON LAW FALSE IMPRISONMENT/ARREST
### (Brought by Plaintiff against Defendants Roberts and Birge)

34.     Paragraphs 1 through 25 are re-alleged and incorporated herein by reference.

35.     This count sets forth claims against Defendants Roberts and Birge for common law false imprisonment/arrest. This count is pled in the alternative and for the purpose of this count Defendants Roberts and Birge were acting outside the course and scope of their employment with Defendant Sheriff.

36.     Plaintiffs are entitled to relief against Defendants Roberts and Birge in that Defendants intentionally and unlawfully detained and restrained Plaintiff against his will; deprived Plaintiff of his liberty without any reasonable cause or color of authority and maintained such complete restraint and deprivation for a period of time.

37.    This unlawful restraint of the Plaintiff's liberty was also accomplished by Defendants Roberts and Birge confining Plaintiff to an area in which the Plaintiff did not wish to be confined.

38.    Plaintiff was further restrained by Defendants' use of coercive words and threats of force as well as actual force and immediate means of coercion against Plaintiff so that the Plaintiff was restrained and deprived of liberty. Defendants Roberts and Birge restrained Plaintiff without any justification and in the absence of probable cause.

39.    At all times material to this action, and at all times during which Plaintiff was being unlawfully restrained, Plaintiff was restrained against his will, and without consent, so that Plaintiff was not free to leave his place of confinement. Defendants Roberts and Birge acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights or safety.

40.    As a direct and proximate cause of Defendant Sheriff's actions, Plaintiff has been damaged, which damages include: mental anguish, pain and suffering, bodily injury, loss of capacity for the enjoyment of life, embarrassment, humiliation, loss of reputation, lost employment opportunities, lost wages, and the loss of other emoluments.  These damages have occurred at present, in the past and

will most likely occur in the future.  Defendants are jointly and severally liable to Plaintiff.

## COUNT III
### FALSE ARREST BROUGHT UNDER 42 U.S.C. §1983
### (Brought by Plaintiff against Defendant Sheriff)

41.   Plaintiff re-alleges paragraphs 1 through 26 above and incorporates those allegations in this Count.

42.   This count sets forth a claim against Defendant Sheriff and his officers, deputies, employees, and agents who, in tandem, operated to violated Plaintiff's rights under the Fourth Amendment to the United States Constitution. These violations were of the type and character as to which any reasonable agency or officer person would be aware.

43.   Through its officers, employees, and agents, and through Defendant Sheriff himself, Defendant Sheriff misused its power, possessed by virtue of state law and made possible only because Defendant Sheriff and his officers, employees and agents were clothed with the authority of state law. The violations of Plaintiff's rights, as described above, occurred under color of state law and are actionable under 42 U.S.C. §1983.

44.   The foregoing actions of Defendant Sheriff were engaged in bad faith, with malicious purpose, and in a manner exhibiting willful and wanton

disregard of human rights, safety and property, and were engaged in without any lawful justification and in the absence of probable cause. Defendant Sheriff knew or should have known that there was no probable cause to arrest Plaintiff and he failed to conduct even a modicum of an investigation which would have shown that Plaintiff was guilty of nothing and that there was no probable cause to arrest him. Additionally, upon information and belief, Slay is believed to have been married to an employee or agent of Defendant Sheriff and the child, referenced above, is believed to be the child of Defendant Sheriff's employee/agent or the brother of same employee/agent. Plaintiff received vailed threats from this employee which relationship appears to be, at least in part, the motive behind the false and malicious arrest of the Plaintiff with false statements in probable cause affidavits and other charging documents resulting in the false arrest of the Plaintiff.

45.    Based upon the facts known or that should have been known to the Defendant Sheriff and his officers, employees, and agents and applicable law, no reasonable law enforcement agency or officer could have concluded that there existed any probable cause to arrest Plaintiff. The law was 'well settled and clearly established that the actions of Defendant Sheriff, his delegates, deputies, officers, employees and agents constituted false arrest under the Fourth

Amendment to the United States Constitution at the time the actions were engaged in.

46.    The actions or inactions of Defendant Sheriff as set forth in part herein constituted deliberate indifference and/or reckless disregard for the constitutional rights of Plaintiff.

47.    Defendant Sheriff was the person who directed the arrest of Plaintiff. Consequently, he was the final policymaker with respect to Plaintiff's arrest and he is liable for the false arrest of Plaintiff.  Alternatively, Defendant Sheriff acted with deliberate indifference in the failure to implement adequate hiring and supervisory procedures--or implemented no such policies or procedures-- to prevent the harm that was caused to  Plaintiff including policies or procedures to properly identify suspects who committed criminal activity; policies and procedures to identify officers who falsify facts to  support probable cause affidavits; policies and procedures to supervise officers/deputies in Defendant Sheriff's employ; and policies and procedures to properly discipline officers/deputies who willfully trample on the constitutional rights of law abiding citizens, like Plaintiff and to prevent the type of harm described in part above, as a direct result of which Plaintiff was injured. Defendant Sheriff was also

deliberately indifferent in failing to train his officers in basic human dignity which resulted in constitutional violations as set forth in part above.

48.    Defendant Sheriff, individually and through delegated final decision makers, acted under color of state law and failed to supervise, investigate and discipline other officers/deputies, employees and agents *as* alleged herein, and was deliberately indifferent in their training and supervision, the results of which were constitutional violations.   Sheriff and his delegates failure to, supervise, investigate and discipline the individually named Defendants and other officers/deputies, employees and agents constitutes either an improper policy or the absence of a policy of Defendant Sheriff which resulted in the deliberate indifference to the constitutional rights of the Plaintiff set forth above.

49.    Defendant Sheriff's supervisors and delegated final policymakers also, after notice of the constitutional violations alleged herein, officially sanctioned these actions and refused to discipline the individually named Defendants and other officers/deputies, employees, and agents which established a policy, by a final policymakers, that directly or indirectly resulted in the violation of Plaintiff's constitutional rights.

50.    As a direct and proximate cause of Defendant Sheriff's actions, Plaintiff has been damaged, which damages include: mental anguish, pain and suffering, bodily injury, loss of capacity for the enjoyment of life, embarrassment,

humiliation, loss of reputation, lost employment opportunities, lost wages, and the loss of other emoluments.  These damages have occurred at present, in the past and will most likely occur in the future.  Defendants are jointly and severally liable to Plaintiff.

## COUNT IV
### FALSE ARREST BROUGHT UNDER 42 U.S.C. §1983
### (Brought against Defendants Roberts and Birge)

51.     Plaintiffs re-allege paragraphs l through 26 above and incorporate those allegations in this Count.

52.     This count sets forth a claim against Defendants Roberts and Birge who individually and in tandem violated Plaintiff's rights under the Fourth Amendment to the United States Constitution. These violations were of the type and character as to which any reasonable agency or officer or person would be aware.

53.     Defendants Roberts and Birge misused their power, possessed by virtue of state law and made possible only because they were clothed with the authority of state law. The violations of Plaintiff s rights, as described above, occurred under color of state law and are actionable under 42 U.S.C. §1983.

54.     The foregoing actions of the Defendants were engaged in bad faith, with malicious purpose, and in a manner exhibiting willful and wanton disregard of human rights, safety and property, and were engaged in without any lawful

justification and in the absence of probable cause.  Defendants knew or should have known that there was no probable cause to arrest Plaintiff given the circumstances present and the clearly established law on the proof needed to establish "arguable probable cause."  Defendant Roberts and Birge either falsified or caused to be falsified probable cause affidavits and other documents to cause the arrest of Plaintiff.  These actions violated the Fourth Amendment to the United States Constitution.

55.    Based upon the facts presented to Defendants no reasonable law enforcement officer could have concluded that there existed any probable cause to arrest Plaintiff. The law was settled and clearly established that the actions of Defendants constituted false arrest under the Fourth Amendment to the United States Constitution at the time the actions were engaged in.

56.    The actions or inactions of Defendants as set forth in part above constituted a deliberate indifference or reckless disregard for the safety of Plaintiff when they knew of and disregarded a risk to Plaintiffs' health and safety.

57.    As a direct and proximate cause of Defendants' actions, Plaintiff has been damaged, which damages include: lost wages and other emoluments, grave mental anguish, pain and suffering, loss of capacity for the enjoyment of life, embarrassment, humiliation, loss of reputation, and the loss of other emoluments.

These damages have occurred at present, in the past and will most likely occur in the future.  Plaintiffs are entitled to punitive damages.

## COUNT V
## NEGLIGENCE
### (Brought against Defendant Sheriff)

58.   Plaintiff re-alleges paragraphs 1 through 26 above and incorporates those allegations in this Count.

59.   This count sets forth a claim against Defendant Sheriff for common law negligence. Defendant Sheriff knew or should have known that Plaintiff was within a zone of risk related to contact with its agents/employees.

60.   Defendant Sheriff owed a duty of care to Plaintiff due to the nature of the relationship between Plaintiff and Defendant Sheriff and/or Defendant Sheriff had a special relationship with Plaintiff and, consequently, a duty of care was attendant thereto. Alternatively, legal duties devolved upon Defendant Sheriff because Plaintiff was in the foreseeable zone of risk to be harmed by the actions thereof.

61.   Defendant Sheriff further breached its duty to properly supervise its employees and agents, to ensure the safety of the Plaintiff and/or to properly investigate the circumstances of criminal and/or tortious activity by violating §§836.02 and 836.11, Florida Statutes, when Defendant Sheriff allowed what a

reasonable person would have interpreted as a "wanted poster" of Plaintiff to be posted and displayed in the Jackson County Courthouse.

62.   The actions of Defendant Sheriff and a complained of herein were "operational" functions, i.e., functions that were not necessary to or inherent in policymaking or planning, that merely reflected secondary decisions as to how policies or plans were to be implemented.

64.   As a direct and proximate result of the above unlawful acts and omissions, Plaintiff sustained economic damages, including lost income, sustained emotional pain, anguish, humiliation, insult, indignity, loss of self-esteem, inconvenience and hurt, all because of the actions of Defendants and is therefore entitled to compensatory damages.

## COUNT VI
## COMMON LAW NEGLIGENT HIRING, RETENTION, TRAINING, AND SUPERVISION
### (Brought against Defendant Sheriff)

65.   Plaintiff re-alleges paragraphs 1 through 26 above and incorporates those allegations in this Count.  This Count is pled in the alternative.

66.   This count sets forth a claim against Defendant Sheriff for negligent hiring, retention, training and supervision.

67.   Defendant Sheriff breached its duty to properly supervise his officers, employees, and agents.

68.     The breach of this duty to properly hire, retain, train and supervise the Birge and other officers, employees and agents resulted in damages and injury to Plaintiff.  Defendant Sheriff knew or should have known that the actions, omissions, and derelictions of officers, employees, and agents could cause injury to Plaintiff.

69.     Defendant Sheriff breached its duties to hire and/or maintain the employment of employees who were fit for the duties they performed and to supervise and train its employees and agents.

70.     As a direct and proximate result of the above unlawful acts and omissions, Plaintiff sustained damages, including lost wages, emotional pain, anguish, humiliation, insult, indignity, loss of self-esteem and inconvenience and hurt and is therefore entitled to compensatory damages.

## COUNT VII
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Brought against Defendant Roberts and Birge)

71.     Paragraphs 1 through 26 are realleged and are incorporated herein by reference.

72.     This count sets forth a claim against Defendants Roberts and Birge for intentional infliction of emotional distress. For the purpose of this claim, Defendants Roberts and Birge were acting outside the course and scope of their employment with Defendant Sheriff. This claim is pled in the alternative.

73.     Defendants Roberts and Birge conduct set forth in part above included several instances of mistreatment of Plaintiff.  This conduct by Defendants Roberts and Birge constituted extreme and outrageous conduct that would shock the conscience of a reasonable person and goes beyond all bounds of decency. Defendants Roberts and Birge's conduct was the proximate cause of Plaintiffs' emotional distress and Plaintiffs' emotional distress were severe.  Defendants Robert and Birge's conduct constitutes the actionable tort of intentional infliction of emotional distress.

74.     Defendants Roberts and Birge intentionally and/or recklessly caused Plaintiff emotional distress by making false statements all to cause Plaintiff to be unjustifiably arrested, imprisoned, and prosecuted and looked upon by the Jackson County community as a person of ill repute based on the "wanted poster". These actions by Roberts and Birge were made in bad faith and with a malicious purpose and with a willful disregard for Plaintiff's rights.

75.     As a direct and proximate result of the above unlawful acts and omissions, Plaintiffs were injured and sustained economic damages, including lost income, lost prestige, lost potential employment and good standing in the community, he has lost the capacity for the enjoyment of life; sustained severe emotional pain, anguish, humiliation, insult, indignity, loss of self-esteem, inconvenience and hurt, because of Defendants Roberts' and Birger's actions, and

23

is therefore entitled to compensatory damages.  Plaintiff's damages are continuous; they have occurred in the past, are occurring in the present, and will continue to occur in the future.

## COUNT VIII
## COMMON LAW MALICIOUS PROSECUTION
### (Brought against Defendants Roberts and Birge)

76.     Paragraphs 1 through 26 are hereby realleged and incorporated herein by reference.

77.     This count sets forth claims against Defendants Roberts and Birge for malicious prosecution, and is pled in the alternative.  For purposes of this count, Defendants Roberts and Birge were acting outside the course and scope of employment with Defendant Sheriff.

78.     Defendants Roberts and Birge caused the commencement and/or continuation of criminal proceedings against Plaintiff.  The subject proceedings had bona fide terminations in Plaintiff's favor in that the charges against Plaintiff were dropped or dismissed or resolved in Plaintiff's favor.

79.     There was no probable cause or reasonable basis in fact or in law for the individually named Defendants Roberts and Birge to cause the commencement of the criminal proceedings against Plaintiff.

80.     Defendants Roberts and Birge acted with malice in initiating the criminal proceedings against Plaintiff, as well as in making the arrest, and these

Defendants Roberts and Birge knew that their actions against Plaintiff were not supported by even arguable probable cause.

81.    As a direct and proximate cause of the Individual Defendants actions, Plaintiff has been damaged, which damages include: lost wages, mental anguish, pain and suffering, loss of capacity for the enjoyment of life, embarrassment, humiliation, bodily injury, and loss of reputation.  These damages have occurred at present, in the past and will most likely occur in the future. Plaintiff is entitled to punitive damages under this count.

## COUNT IX
## CONVERSION (Firearms)
### (Brought against Defendant Sheriff)

82.    Plaintiff realleges and re-avers all allegations contained in paragraphs 1- 26 above.

83.    The Jackson County Sheriff's Office, through the actions of Defendant Sheriff, unlawfully took physical custody, possession and control of several firearms belonging to Plaintiff, as described in greater detail above.

84.    Despite repeated demands from Plaintiff for the return of his firearms, Defendant Sheriff refused to do so, and thereby unlawfully depriving him of the possession, custody and control of his lawfully owned, and illegally seized, firearn1s.

85.     Although the firearms were eventually returned to Plaintiff, the actions of Defendant deprived Plaintiff of his constitutionally protected right to bear arms, as guaranteed him by the Second Amendment to the United States Constitution.

86.     As a direct and proximate cause of the Individual Defendants actions, Plaintiff has been damaged, which damages include: mental anguish, pain and suffering, loss of capacity for the enjoyment of life, embarrassment, humiliation, bodily injury, and loss of reputation.  These damages have occurred at present, in the past and will most likely occur in the future. Plaintiff is entitled to punitive damages under this count.

## COUNT X
## COMMON LAW ABUSE OF PROCESS
### (Against Defendant Sheriff)

87.     Paragraphs 1-26 and 44 are incorporated herein by reference.

88.     This is an action against Defendant Sheriff for abuse of process.

89.     Defendant Sheriff with malice did exert pressure on the State Attorney's Office in, an illegal, improper, or perverted use of process by Defendant Sheriff; did have an ulterior motive or purpose in exercising the illegal, improper, or perverted process; and did cause grievous harm and damage to Plaintiff as a result of Defendant Sheriff's actions.

90.     Specifically, and without limitation, Defendant Sheriff caused the criminal prosecution to continue even after there was no probable cause and, upon information and belief, caused the false allegations of mental illness to be made about Plaintiff.

91.     As a direct and proximate result of the actions taken by Defendant Sheriff, Plaintiff has suffered injury, including but not limited to past and future wage losses, loss of benefits, and other tangible and intangible damages.  These damages have occurred in the past, are occurring at present and will occur in the future.

## COUNT X
## FOURTEENTH AMENDMENT VIOLATION-DUE PROCESS
### (Against Defendant Sheriff)

92.     Paragraphs 1 through 26 above are incorporated by reference in this count.

93.     This count sets forth claims against Defendant Sheriff for abuse of power in violation of the Due Process clause of the Fourteenth Amendment, brought through U.S.C. §1983.  This count is set forth in the alternative.

94.     Defendant Sheriff violated the Due Process clause of the Fourteenth Amendment by posting a "wanted" photograph of Plaintiff without giving him the opportunity to challenge that action.  There was no process available to Plaintiff to prevent or stop the Defendant Sheriff from posting the "wanted poster" displaying

his picture in a prominent place in the Jackson County Courthouse. This action against Plaintiff was make knowingly, maliciously, and unlawfully, and under color of state law.

95.    Defendant Sheriff misused and abused his power, possessed by virtue of state law and made possible only because he was clothed with the authority of state law. The violation of Plaintiff's rights, as described above, occurred under color of state law and is actionable under 42 U.S.C. §1983.

96.    Defendant Sheriff is a person under applicable law, and is liable to Plaintiff for the violation of legal and constitutional rights. Defendant Sheriff made the decision as the final policymaker for the Defendant to post Plaintiff's photograph as described more fully herein. Alternatively, Defendant delegated his agents as final policymakers regarding the posting of the photograph.

97.    Defendant Sheriff acted in bad faith, with malicious purpose, and in a manner exhibiting wanton and willful disregard for human rights, safety, and property.

98.    Defendant Sheriff used his position of authority for illegal and improper purposes. He had ulterior motives in acting in furtherance of their principal or themselves.

99.    The foregoing actions of Defendant Sheriff were willful, wanton and in reckless disregard of Plaintiff's rights, and were taken without any lawful

justification.   Defendant Sheriff knew or should have known that they were abusing their power, in violation of both the United States Constitution and federal law.

100.   As a direct and proximate result of the actions of Defendant Sheriff, Plaintiff has been damaged, which damages include: grave mental anguish, pain and suffering, loss of capacity for the enjoyment of life, embarrassment, humiliation, loss of reputation, lost employment opportunities, lost wages, and the loss of other emoluments. These damages have occurred at present, in the past, and will most likely occur in the future.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendant for the following:

(a)   that process issue and this Court take jurisdiction over this case;

(b)   that this Court grant equitable relief against Defendant under the applicable counts set forth above, mandating Defendant's obedience to the laws enumerated herein and providing other equitable relief to Plaintiff;

(c)   enter judgment against Defendant and for Plaintiff awarding all legally-available general and compensatory damages and

economic loss to Plaintiff from Defendant for Defendant's violations of law enumerated herein;

(d)     enter judgment against Defendant and for Plaintiff permanently enjoining Defendant from future violations of law enumerated herein;

(e)     enter judgment against Defendant and for Plaintiff awarding Plaintiff attorney's fees and costs;

(f)     award Plaintiff interest where appropriate; and

(g)     grant such other further relief as being just and proper under the circumstances, including but not limited to reinstatement.

<u>**DEMAND FOR TRIAL BY JURY**</u>

Plaintiff hereby demands a trial by jury on all issues herein that are so triable.

DATED this 24th day of March 2019.

Respectfully submitted,

<u>/s/ Marie A. Mattox</u>
Marie A. Mattox [FBN 0739685]
MARIE A. MATTOX, P. A.
203 North Gadsden Street
Tallahassee, FL 32301
Telephone:  (850) 383-4800
Facsimile:   (850) 383-4801
ATTORNEYS FOR PLAINTIFF