## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

THEODORE L. WHIDDEN,

     Plaintiff,

v.                                   Case No.  5:19-cv-80-MCR/MJF

LOUIS S. ROBERTS, III,
and LARRY BIRGE,

     Defendants.

_____/

## REPORT AND RECOMMENDATION

Defendants Louis S. Roberts, III and Larry Birge have moved for summary judgment on all outstanding claims of Plaintiff Theodore L. Whidden's second amended complaint. (Docs. 83, 84). Whidden responded in opposition. (Docs. 124, 125). The undersigned recommends that Roberts's and Birge's respective motions for summary judgment be granted in part—that is, only as to Counts One, Two, Three, Four, Eight, and Eleven—because Whidden has failed to demonstrate the existence of a genuine issue of material fact and Defendants are entitled to judgment as a matter of law.[1] The undersigned also recommends that the District Court decline to exercise supplemental jurisdiction over Whidden's remaining state-law claims.

_____

[1] The District Court referred this case to the undersigned to address preliminary matters and to make recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b); Fed R. Civ. P. 72(b).

# I. Background

## A.    Whidden's Interactions with Jessica Slay

In April 2015, Whidden hired Jessica Slay ("Slay") to help clean mobile homes that Whidden owned and which were located on Pollywog Lane in Marianna, Florida. (Doc. 125-5 at 47, 119-20, 122).[2]  Slay also had a "storage problem" because Slay had home furnishings—including bunk beds—that she needed to store. (*Id.* at 123). Whidden needed various home furnishings for one of his mobile homes because he wanted "to set up a bunk house." (*Id.*). Whidden, therefore, paid Slay $200.00 for some of Slay's home furnishings, including the bunk beds, and Slay was to move that furniture into one of Whidden's mobile homes. (Doc. 125-5 at 123). Slay was supposed to set up the beds, clean multiple mobile homes, and get at least one of them ready for tenants to occupy. (*Id.*).

According to Whidden, Slay was not his tenant, although he allowed Slay to set up a playroom in one of the mobile homes so that her children could play while Slay cleaned. (*Id.* at 122-23, 125). Without Whidden's permission, Slay moved some of her personal property into the mobile homes. (*Id.* at 141).

In May 2015, Whidden noticed a septic tank overflowing on his Pollywog Lane property. (Doc. 125-5 at 40-41). The mobile homes Slay was supposed to clean were

---

[2] The facts are viewed in the light most favorable to Whidden, who is the non-moving party.

connected to this septic tank. (*Id.*). Whidden found duct tape, condoms, "baggies," and "a whole host of lithium batteries cut in half" in the septic system. (*Id.* at 42).

Whidden suspected that the items in the septic tank constituted evidence of criminal activity, namely the production of methamphetamine. (*Id.* at 42-43). On May 7, 2015, Whidden, therefore, reported to the Jackson County Sheriff's Office ("JCSO") a suspected methamphetamine laboratory. (Doc. 85-1 at 2; Doc. 125-5 at 42). Deputy Ethan Ellerbe was dispatched in response. (Doc. 125-5 at 44). At some point, Whidden determined that Slay was living on his property. (Doc. 125-5 at 46-47).

On May 8, 2015, Slay contacted the JCSO. She reported that Whidden—whom she identified as her landlord—had placed a note on a gate to the residence Slay purportedly was leasing. The note instructed Slay to vacate the premises by May 10, 2015, because Whidden had found evidence of a methamphetamine laboratory. (Doc. 85-1 at 3).

On May 10, 2015, Slay again contacted the JCSO about Whidden. (*Id.* at 4). Slay again identified Whidden as her landlord and told the dispatcher that Whidden informed her that, if she did not remove her possessions, Whidden was going to "kick her and her kids out." (*Id.*).

On May 11, 2015, Whidden contacted the JCSO and requested that a deputy come to his property. (Doc. 85-1 at 5; Doc. 125-5 at 52). Whidden claims that he told an unnamed JCSO deputy sheriff that "trespassers" were not permitted on his property

because of issues with the septic system and that he was leaving town. (Doc. 125-5 at 52).

On May 12, 2015, Slay contacted the JCSO and reported that Whidden—whom she again identified as her landlord—had placed a padlock on the gate to the property she was leasing, which precluded her from entering her residence. (Doc. 85-1 at 6). Later that day, Defendant Birge wrote an Incident Report stating the following:

> On 12 May 2015, Jennifer Slay came to the Sheriff's Office to report that several deputies have been summoned by her regarding her property inside a mobile home she had rented from Theodore Whidden. Slay reports that she paid $600 cash to Whidden to rent a mobile home on 2298 [Pollywog] Lane, Marianna, Florida. On May 8, 2015, she states that Whidden left her a note to get her belongings from the residence. Slay reports that her rent is paid through May 2015. Slay reports that she text[] messaged Whidden regarding this notice she received. Whidden replied that she needed to move. Slay reports that Whidden turned off the water and electric to the mobile home. Slay [says] she appealed to Whidden regarding this issue to no avail. Slay stated that Whidden then locked the gate on the property preventing her from removal [sic] of her belongings that she estimates to be around $10000.
>
>  . . .
>
> Whidden did not attempt any eviction process from the clerk's office nor was [sic] he given any kind of relief to Slay. Slay reports that she and her two children ages seven and twelve have not been able to retrieve their personal property from the premises. Slay turned over the text messages she had on her phone along with photographs of the lock to the property. In one of the text messages she states that deputies who have responded to her has [sic] told her that Whidden cannot simply give her a two day notice to vacate the mobile home. Slay states that she was texted back from Whidden stating that "deputies are out of their jurisdiction and no judge can tell him what to do." Slay has provided

copies of the text messages along with pictures and these are being sent to the State Attorney's Office.

On 12 May 2015, this investigator called Mr. Whidden in an effort to bring an end to this issue however [he] would not return any calls.[3]

On 13 May 2015, a complaint affidavit was completed and signed by Jennifer Slay and is being sent to the State Attorney's Office for a warrant. As it stands at this time Slay's property along with her children's property can [not] be accessed due to Whidden locking the property. A call was made to the State Attorney's Office regarding this complaint.

(Doc. 85-2 at 3-4).[4]

## B.    The Arrest and Prosecution of Whidden

On May 21, 2015, Jackson County Judge Wade Mercer found probable cause to issue an arrest warrant for Whidden based on a felony charge of "grand theft," pursuant to Florida Statutes § 812.014(1) and (2)(c). (Doc. 85-2 at 2). The arrest warrant stated:

WHEREAS, a Sworn Complaint having been this day filed before me as a Judge of Circuit Court in and for Jackson County, wherein it is alleged that on or about the 8th day of May, 2015, in JACKSON County, Florida, one THEODORE WHIDDEN did then and there knowingly obtain or use, or endeavor to obtain or use miscellaneous household furnishings and items, of a value of $300.00 or more, which was the property of Jennifer Slay, or any other person not the defendant(s), with the intent to permanently or temporarily deprive Jennifer Slay or any other person not the defendant(s) of the

---

[3] Whidden confirmed that he did not speak to Birge in May 2015. (Doc. 125-5 at 83).

[4] Whidden submitted this report in response to Defendants' motions for summary judgment. (Doc. 125-4 at 104-05). He also has asked this court to "accept" this evidence. (Doc. 61).

property or benefit therefrom or to appropriate the property to the use
of THEODORE WHIDDEN or to the use of any person not entitled
thereto, contrary to Florida Statute 812.014(1) and (2)(c). (3 DEG FEL)

(Doc. 85-2 at 2).

Whidden does not deny that Judge Mercer issued this arrest warrant or that it
included this statement of probable cause. Rather, he claims that the warrant "was
based on deceptions by Slay" and that Slay falsely "alleged under oath that she had
been unlawfully removed from [Whidden's] property and that [Whidden] had stolen
. . . Slay's personal property off the premise." (Doc. 58 at 3 ¶ 14).

On July 29, 2015, JCSO Deputy Sheriff Quinton Hollis arrested Whidden
pursuant to the arrest warrant issued by Judge Mercer. (Doc. 85-2 at 43). During the
course of that arrest, Hollis located several firearms in Whidden's vehicle and, based
on this, also charged Whidden with Open Carry of a Firearm, pursuant to Florida
Statutes §§ 790.53 and 790.25. (*Id.*).

On November 2, 2015, after Whidden produced his permit to carry a concealed
weapon, the State filed a "no information" regarding the firearms offense, thereby
terminating the prosecution of that offense. (*Id.* at 46).

Whidden alleges that in December 2015, someone place a photograph of him—
which also listed his telephone number, Social Security number, and date of birth—at
the entrance of the Jackson County courthouse, and that this photograph remained

there through September 2016. (Doc. 58 at 5, 15-16). Whidden characterizes this photograph as a "wanted poster." (*Id.*).

On February 19, 2016, Slay requested that the State drop the charges against Whidden. (Doc. 85-2 at 40). On February 26, 2016, the State filed a *nolle prosequi*. (*Id.* at 39).

## C.    Whidden's Instant Lawsuit

On March 24, 2019, Whidden initiated this action pursuant to 42 U.S.C. § 1983. In his second amended complaint, Whidden sued Defendant Roberts "in his official capacity as Sheriff" of Jackson County, Florida and Defendant Birge in his individual capacity. (Doc. 58 at 1). Whidden asserts fourteen claims, including a number of claims under Florida law. On November 9, 2020, the District Court dismissed Counts Seven, Twelve, Thirteen, and Fourteen. (Doc. 132). Defendants have moved for summary judgment on the remaining claims. (Docs. 83, 84).

## II. Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure states that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "genuine" dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th

Cir. 2004). An issue of fact is "material" if it could affect the outcome of the case. *Anderson*, 477 U.S. at 248; *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995).

When addressing a motion for summary judgment, a court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Hickson*, 357 F.3d at 1260 (quoting *Anderson*, 477 U.S. at 251-52). At "the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S at 249. A "scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry . . . asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict . . . ." *Id.* at 252. In evaluating a summary judgment motion, all "justifiable inferences" must be resolved in the nonmoving party's favor so long as there is a genuine dispute as to those facts. *Beard v. Banks*, 548 U.S. 521, 529 (2006); *see Scott v. Harris*, 550 U.S. 372, 380 (2007).

## III. DISCUSSION

## A.   Counts Three and Four: Wrongful Arrest in Violation of the Fourth Amendment

Roberts and Birge move for summary judgment on Whidden's claims for wrongful arrest in violation of the Fourth Amendment against Roberts (Count Three)

and Birge (Count Four). (Doc. 83 at 15; Doc. 84 at 15).[5] Roberts and Birge argue that they are entitled to summary judgment on the section 1983 wrongful arrest claim because Plaintiff "was arrested on a facially valid warrant that was constitutionally sound and signed by a neutral judge." (Doc. 83 at 17).

The Fourth Amendment safeguards the right to be free from unreasonable seizures. U.S. Const. amend. IV. Arrests are a seizure of the person. *Brendlin v. California*, 551 U.S. 249, 254 (2007); *Skop v. City of Atlanta*, 485 F.3d 1130, 1137 (11th Cir. 2007) (citing *California v. Hodari D.*, 499 U.S. 621, 624 (1991)).

To prevail on a claim of wrongful arrest in violation of the Fourth Amendment, a plaintiff must establish that:

(1) the defendant arrested the plaintiff or committed an act that resulted in the plaintiff's confinement;

(2) the defendant acted under color of law;

(3) the defendant acted with the intent to arrest or confine the plaintiff;

(4) the plaintiff was conscious of his arrest, confinement, or resulting harm;

(5) the plaintiff did not consent to his arrest or confinement; and

---

[5] "False arrest and false imprisonment overlap; the former is a species of the latter." *Wallace v. Kato*, 549 U.S. 384, 388 (2007). The Supreme Court has referred to such claims as "wrongful arrest." *See Manuel v. City of Joliet, Ill.*, 580 U.S. ___, 137 S. Ct. 911, 919 (2017) (stating that a plaintiff who alleged being arrested without probable cause "could bring a claim for wrongful arrest under the Fourth Amendment"). The undersigned, therefore, also will employ that nomenclature.

(6) the arrest or confinement of plaintiff violated the Fourth Amendment.

*See Wallace*, 549 U.S. at 389; *Harvard v. Cesnalis*, 973 F.3d 190, 199 (1st Cir. 2020); *Harris v. U.S. Dep't of Veteran's Affairs*, 776 F.3d 907, 911-12 (D.C. Cir. 2015); *Campbell v. Johnson*, 586 F.3d 835, 840 (11th Cir. 2009); *Ortega v. Christian*, 85 F.3d 1521, 1526 & n.2 (11th Cir. 1996); *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995); *Canon v. Macon Cnty.*, 1 F.3d 1558, 1562-63 (11th Cir. 1993).

### 1.    *Defendants Had Probable Cause to Arrest Whidden*

As to the sixth element, the Fourth Amendment prohibits only unreasonable seizures. *Ohio v. Robinette*, 519 U.S. 33, 39 (1996). Under the Fourth Amendment, an arrest is reasonable if it is "'based on probable cause' to believe that the individual has committed a crime." *Bailey v. United States*, 568 U.S. 186, 192 (2013) (quoting *Dunaway v. New York*, 442 U.S. 200, 213 (1979)); *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). The "existence of probable cause at the time of arrest is an absolute bar to a subsequent constitutional challenge to the arrest." *Gates v. Khokhar*, 884 F.3d 1290, 1297 (11th Cir. 2018) (quoting *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 734 (11th Cir. 2010)); *Rushing v. Parker*, 599 F.3d 1263, 1265 (11th Cir. 2010) (same). A wrongful arrest claim, therefore, requires a plaintiff to show that there was no probable cause to arrest him for "any crime." *Williams v. Aguirre*, 965 F.3d 1147, 1158 (11th Cir. 2020); *Lee v. Ferraro*, 284 F.3d 1188, 1196 (11th Cir. 2002); *United States v. Saunders*, 476 F.2d 5, 7 (5th Cir. 1973).

To determine whether probable cause exists, courts "look at the facts as the officers knew them in light of the specific elements" of any offense for which the plaintiff was liable to be arrested. *Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013); *Skop*, 485 F.3d at 1137-38; *Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1333 (11th Cir. 2004). "Probable cause 'is not a high bar.'" *District of Columbia v. Wesby*, 583 U.S. ___, 138 S. Ct. 577, 586 (2018) (quoting *Kaley v. United States*, 571 U. S. ___, 134 S. Ct. 1090, 1103 (2014)). Rather, probable cause "is a relatively low threshold of proof . . . ." *Valdez v. McPheters*, 172 F.3d 1220, 1227 n.5 (10th Cir. 1999).

"Probable cause exists where the facts within the collective knowledge of law enforcement officials, derived from reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that a criminal offense has been or is being committed." *Gates*, 884 F.3d at 1298 (quoting *Brown*, 608 F.3d at 734). "Probable cause does not require overwhelmingly convincing evidence . . . ." *Ortega*, 85 F.3d at 1525. "Probable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction." *Adams v. Williams*, 407 U.S. 143, 149 (1972) (citing *Draper v. United States*, 358 U.S. 307, 311-12 (1959)); *United States v. Lindsey*, 482 F.3d 1285, 1291 (11th Cir. 2007).

Pursuant to the arrest warrant issued by Judge Mercer, Deputy Hollis arrested Whidden for the offense of "Grand Theft," in violation of Florida Statutes § 812.014(1)

and (2)(c). The statute provides in relevant part:

> (1) A person commits theft if he or she knowingly obtains or uses, or endeavors to obtain or to use, the property of another with intent to, either temporarily or permanently:
>
>> (a) Deprive the other person of a right to the property or a benefit from the property.
>>
>> (b) Appropriate the property to his or her own use or to the use of any person not entitled to the use of the property.

Fla. Stat. § 812.014(1). Subsection (2)(c) simply sets forth the type of property the theft of which constitutes "grand theft of the third degree." *Id.*

> The offense of theft has two elements:
>
> (1) the person knowingly obtained or used, or endeavored to obtain or use, the property of another;
>
> (2) at the time he did so, the person had the specific intent to deprive the other person of a right to the property or a benefit from the property, or to appropriate the property to his use or the use of another.

*United Tech. Corp. v. Mazer*, 556 F.3d 1260, 1270 (11th Cir. 2009); *Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1327 (11th Cir. 2006); *AL v. State*, 275 So. 3d 819, 822 (Fla. 2d Dist. Ct. App. 2019) (listing the elements of petit theft); *Leggett v. State*, 237 So. 3d 1144, 1146 (Fla. 3d Dist. Ct. App. 2018); *Brown v. State*, 189 So. 3d 837, 839 (Fla. 4th Dist. Ct. App. 2015).

Birge testified in a deposition:

> On May the 12th, a lady by the name of Jennifer Slay came by my office, she had been referred to our Sheriff's Office regarding getting

her personal things out of a mobile home at 2298 Pollywog Lane that
was owned by Theodore Whidden and she had approximately $10,000
worth of property, she said, inside the mobile home that he said he
would not allow her to go get. He in fact locked the gate to prevent her
from getting her property. Anyway, as I always do, I called Mr.
Whidden to see if we could work the situation out, but he never returned
my phone call that day.

        I was then sent the - - I did the complaint at Ms. Slay's request .
. . .

(Doc. 131-1 at 3-4).[6]

    This testimony indicates that the JCSO had information that Whidden obtained

and endeavored to obtain Slay's property and deprived Slay of her property. As to the

*mens rea* elements, there was circumstantial evidence that Whidden acted knowingly

and with the intent to deprive Slay of her property: the fact that he allegedly rebuffed

her entreaties to recover the property and the fact that he allegedly locked a gate to

prevent her from retrieving her property. *See Cuellar v. United States*, 553 U.S. 550,

567 n.8 (2008) ("In many cases, a criminal defendant's knowledge or purpose is not

established by direct evidence but instead is shown circumstantially . . . ."); *Savannah*

*College of Art & Design, Inc. v. Sportswear, Inc*., 983 F.3d 1273, 1284 (11th Cir. 2020)

("Intent may be proven by circumstantial evidence."); *Jones v. State*, 192 So. 2d 285,

---

[6] Whidden offered Birge's deposition transcript as evidence to be considered by the
court in addressing Defendants' motions for summary judgment. (Doc. 124-1 at 24-
26). Because Whidden submitted an unofficial transcript of Birge's deposition, the
undersigned ordered Defendants to produce an official version, and Defendants did so.
(Doc. 131-1 at 2-8). Whidden quibbles with portions of the transcription. (Doc. 133 at
33-37). In such instances, for purposes of Defendants' motions for summary judgment,
the undersigned accepted Whidden's version.

286 (Fla. 3d Dist. Ct. App. 1966) ("Intent, being a state of mind, is often not subject to direct proof and can only be inferred from circumstances.").

Finally, as to the value of the property—which makes no difference with respect to probable cause in this case because the value of the property affects only whether petit theft or grand theft was the appropriate charge—Slay informed the JCSO that her property allegedly stolen by Whidden was worth $10,000. (Doc. 131-1 at 4). Thus, the JCSO had probable cause to believe that Whidden committed the crime of grand theft in violation of Florida Statues § 812.014(1) and (2)(c), and the lesser included offense of petit theft.

Whidden contends that Slay was lying and argues that the JCSO should have done a thorough investigation before arresting him. Both propositions may be true. Consistent with the nature of the alleged crime, police officers have a duty to investigate allegations before making an arrest, and they should strive to perform a thorough investigation, whenever possible, to minimize the risk of arresting an innocent person. *Gardenshire v. Schubert*, 205 F.3d 303, 318 (6th Cir. 2000). But the probable cause inquiry asks, "whether an officer has reasonable grounds on which to act, not whether it was reasonable to conduct further investigation." *Kelley v. Myler*, 149 F.3d 641, 647 (7th Cir. 1998). The fact that the police did not conduct a thorough investigation does not in itself negate probable cause. *McKinney v. Richland Cnty. Sheriff's Dep't*, 431 F.3d 415, 418-19 (4th Cir. 2005). The police are "not required to

explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Kingsland v. City of Miami*, 382 F.3d 1220, 1229 (11th Cir. 2004) (quoting *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997)). Even if Whidden had denied his guilt prior to his arrest, "probable cause does not require officers to rule out a suspect's innocent explanation for suspicious facts." *Wesby*, 583 U.S. at ___, 138 S. Ct. at 588. Whidden's post-arrest innocent explanations also do not negate probable cause. *United States v. Fama*, 758 F.2d 834, 838 (2d Cir. 1985) ("The fact that an innocent explanation may be consistent with the facts alleged . . . does not negate probable cause."). As noted above, "probable cause is not an exacting standard." *United States v. $42,500 in U.S. Currency*, 283 F.3d 977, 980 (9th Cir. 2002). The information readily available to the Defendants easily met the relatively low standard that probable cause entails.

### 2. *Probable Cause Also Precludes a Malicious Prosecution Claim*

Although Whidden did not explicitly raise a claim of malicious prosecution in violation of the United States Constitution,[7] when "an individual has been arrested pursuant to a warrant, his claim is for malicious prosecution rather than false arrest." *Carter v. Gore*, 557 F. App'x 904, 906 (11th Cir. 2014) (citing *Calero-Colon v. Betancourt-Lebron*, 68 F.3d 1, 4 (1st Cir. 1995)). Accordingly, Whidden's section

---

[7] In Count Eight of his second amended complaint, Whidden raises a claim of malicious prosecution under Florida law. (Doc. 58 at 13).

1983 claims should also be construed as claims for malicious prosecution in violation of the Fourth Amendment. *United States v. Jordan*, 915 F.2d 622, 624-25 (11th Cir. 1990) (noting that courts have an obligation to look beyond the labels used by *pro se* litigants).

A police officer who applies for an arrest warrant can be liable for malicious prosecution if he should have known that his application "failed to establish probable cause," or if he made statements or omissions in his application that were material and "perjurious or recklessly false." *Black v. Wigington*, 811 F.3d 1259, 1267 (11th Cir. 2016) (quoting *Malley v. Briggs*, 475 U.S. 335, 345 (1986)).

To assert a § 1983 malicious prosecution claim, a plaintiff must establish the following elements:

(1) the defendant instituted or continued a criminal prosecution against the plaintiff;

(2) the defendant acted under color of law, with malice, and without probable cause;

(3) the criminal prosecution terminated in plaintiff's favor;

(4) the defendant violated the plaintiff's Fourth Amendment right to be free from an unreasonable seizure; and

(5) the defendant's actions caused damage to plaintiff.[8]

*See Heck v. Humphrey*, 512 U.S. 477, 484 (1994); *Laskar v. Hurd*, 972 F.3d 1278, 1284 (11th Cir. 2020); *Blue v. Lopez*, 901 F.3d 1352, 1357 (11th Cir. 2018); *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1256 (11th Cir. 2010).

As with a wrongful arrest claim, lack of probable cause is an essential element of a malicious prosecution claim. Therefore, a "police officer cannot be liable for malicious prosecution if the arrest warrant was supported by probable cause." *Black*, 811 F.3d at 1267 (citing *Wood v. Kesler*, 323 F.3d 872, 882 (11th Cir. 2003)). "In the context of an arrest warrant, the plaintiff must establish either 'that the officer who applied for the warrant should have known that his application failed to establish probable cause' or 'that an official, including an individual who did not apply for the warrant, intentionally or recklessly made misstatements or omissions necessary to support the warrant.'" *Laskar*, 972 F.3d at 1296 (quoting *Williams*, 965 F.3d at 1165). Whidden has not put forth sufficient evidence to create a genuine issue as to either possibility.

As demonstrated above, the Defendants had probable cause to believe that Whidden committed the offense of grand theft and the lesser included offense of petit

---

[8] As to the fifth element, "a plaintiff may recover *nominal* damages even though he suffers no compensable injury" when he raises a claim of malicious prosecution under the Fourth Amendment. *Laskar*, 972 F.3d at 1284 (quoting *Kelly v. Curtis*, 21 F.3d 1544, 1557 (11th Cir. 1994)).

theft. Whidden has failed to create a genuine issue of material fact on this issue. True, Whidden argues that Slay lied to the JCSO when she told them that Whidden deprived her of her property. (Doc. 58 at 3 ¶ 14). But the police generally are "entitled to rely on a victim's criminal complaint as support for probable cause." *Myers v. Bowman*, 713 F.3d 1319, 1326-27 (11th Cir. 2013); *see Kingsley v. Lawrence Cnty., Missouri*, 964 F.3d 690, 698 (8th Cir. 2020) (noting that police officers generally are entitled to rely on the veracity of information supplied by alleged crime victims).

Whidden has not submitted evidence indicating that the Defendants knew or recklessly disregarded the fact that Slay allegedly was prevaricating.[9] Because the arrest and criminal prosecution of Whidden was initiated upon a demonstration of probable cause to believe that Whidden had committed a criminal offense, Whidden cannot establish an essential element of a section 1983 claim of malicious prosecution. For this reason, Defendants are entitled to summary judgment on Counts Three and Four.

### 3.    *Defendant Birge Also Is Entitled to Qualified Immunity*

Birge also argues that he is entitled to qualified immunity as to Count Four. (Doc. 84 at 15).

---

[9] "When the facts are not in dispute, whether probable cause existed is a question of law . . . ." *Marx v. Gumbinner*, 905 F.2d 1503, 1506 (11th Cir. 1990).

"Qualified immunity shields public officials from liability for civil damages when their conduct does not violate a constitutional right that was clearly established at the time of the challenged action." *Echols v. Lawton*, 913 F.3d 1313, 1319 (11th Cir. 2019) (internal quotation marks omitted). "Under the qualified immunity doctrine, government officials performing discretionary functions are immune not just from liability, but from suit, unless the conduct which is the basis for suit violates clearly established federal statutory or constitutional rights of which a reasonable person would have known." *Sanders v. Howze*, 177 F.3d 1245, 1249 (11th Cir. 1999) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

"To be entitled to qualified immunity, the defendant must first establish that he was acting within the scope of his discretionary authority." *Gaines v. Wardynski*, 871 F.3d 1203, 1208 (11th Cir. 2017) (citing *Maddox v. Stephens*, 727 F.3d 1109, 1120 (11th Cir. 2013)). Once that is shown (and it is unchallenged here), "the burden shifts to the plaintiff to establish that qualified immunity is not appropriate." *Id*. The plaintiff must prove that "(1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." *Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004). To survive assertion of a qualified-immunity defense, the plaintiff must demonstrate both. *Jones v. Fransen*, 857 F.3d 843, 851 (11th Cir. 2017).

Whidden has failed to establish that Birge violated Whidden's Fourth Amendment rights. As demonstrated above, he had probable cause to arrest and initiate a prosecution against Whidden. Whidden, therefore, has not demonstrated that Birge violated the Fourth Amendment.

Furthermore, even if Whidden had demonstrated that Birge had violated a Constitutional right, he has not demonstrated that he violated a clearly established right because there is no doubt that Birge had arguable probable cause to arrest and initiate a prosecution against Whidden. *Crosby*, 394 F.3d at 1332; *Jones v. Cannon*, 174 F.3d 1271, 1283 n.3 (11th Cir. 1999) (noting that an officer is entitled to qualified immunity if he "reasonably could have believed that probable cause existed") (quotations omitted); *Montoute v. Carr*, 114 F.3d 181, 184 (11th Cir. 1997) (same). Arguable probable cause exists where "reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest Plaintiff." *Kingsland*, 382 F.3d at 1232. "If reasonable public officials could differ on the lawfulness of a defendant's actions, the defendant is entitled to qualified immunity." *Storck v. City of Coral Springs*, 354 F.3d 1307, 1314 (11th Cir. 2003).

Here, reasonable officers in the same circumstances and possessing the same knowledge that Defendant did—primarily the information provided by Slay—would have believed that probable cause existed to arrest and initiate a prosecution against

Whidden for grand theft and petit theft.

For these reasons, even if Whidden had created a genuine issue of material fact as to the elements of the claim asserted in Count Four, Birge enjoys qualified immunity, and therefore, is entitled to summary judgment on Count Four.

## B.   Counts One, Two, and Eight: False Arrest/False Imprisonment and Malicious Prosecution Under Florida Law

Roberts and Birge also move for summary judgment on Whidden's claims under Florida law for False Arrest against Roberts (Count One) and Birge (Count Two), and Malicious Prosecution against Birge (Count Eight). (Doc. 83 at 9; Doc. 84 at 9, 24).

Under Florida law, False Arrest and Malicious Prosecution have as an essential element a lack of probable cause for the arrest or prosecution. *Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998) (noting that "probable cause constitutes an absolute bar to both state and § 1983 claims alleging false arrest"); *Alamo Rent-a-Car, Inc. v. Mancusi*, 632 So. 2d 1352, 1355 (Fla. 1994) (noting that one of the elements of a malicious prosecution claim is that "there was an absence of probable cause for the original proceeding"); *Bolanos v. Metro. Dade Cnty.*, 677 So. 2d 1005, 1005 (Fla. 3d Dist. Ct. App. 1996) (per curiam) ("[P]robable cause is a complete bar to an action for false arrest and false imprisonment.").

"The probable cause standard is the same under Florida and federal law." *Davis v. City of Apopka*, 734 F. App'x 616, 621 (11th Cir. 2018). As demonstrated above, the Defendants had probable cause to arrest and initiate a prosecution against Whidden

for grand theft and the lesser included offense of petit theft. The Defendants, therefore, also are entitled to summary judgment on Counts One, Two, and Eight. *See Williams v. City of Homestead*, 206 F. App'x 886, 889 (11th Cir. 2006) (noting that the existence of probable cause required the court to dismiss the plaintiff's Florida law claims for "false imprisonment, false arrest and malicious prosecution").

**C.    Count Eleven:  Violation of Plaintiff's Right to Due Process of Law Under the Fourteenth Amendment of the United States Constitution**

Roberts also moves for summary judgment on Count Eleven of Whidden's second amended complaint, which alleges a federal due process claim against Roberts. (Doc. 58 at 15-16). In this claim, Whidden alleges that Roberts violated the Fourteenth Amendment by posting a "wanted poster" with Plaintiff's photograph "in a prominent place in the Jackson County Courthouse." (*Id.*). Because Whidden previously raised this claim in another federal lawsuit in this District, the undersigned must consider whether Whidden is precluded from again raising this claim.

**1.    *Whidden's Prior Lawsuit Against the Defendants***

On June 23, 2017, Whidden filed a sixty-eight-page complaint—accompanied by thirty-five pages of exhibits—against Defendant Birge; Defendant Roberts; Jackson County, Florida; five employees of the JCSO; two employees of the Jackson County Courthouse; five commissioners of the Jackson County Board of Commissioners; one public defender; and two assistant state attorneys. *Whidden v. Jackson Cnty.*, No. 5:17-

cv-169-RH/GRJ (N.D. Fla. June 23, 2017) (ECF No. 1) ("*Whidden I*").[10] Among other

things, Whidden alleged that Defendants "posted and maintained under 'Color of Law'

a virtual 'Wanted Poster' in the foyer of the Jackson County Courthouse." (ECF No.

1 at 2). Whidden further alleged that Roberts "sought to impair and destroy" him

"through the posting of his booking photograph from the county jail at the front of the

state courthouse." (*Id.* at 7). Count One of Whidden's complaint was brought under 42

U.S.C. § 1983, was titled "Federal Rights of Due Process and Equal Protection" and

was brought against "[a]ll Defendants." (*Id.* at 34). Furthermore, Whidden alleged that

Roberts was the Jackson County Sheriff's "policymaker" as it related to the posting of

the "wanted poster." (*Id.* at 12).

On June 26, 2017, Magistrate Judge Gary R. Jones entered an order which

notified Whidden that his complaint was deficient in several respects. (ECF No. 4). As

is relevant to this case, Judge Jones screened Whidden's complaint pursuant to the

Rule 12(b)(6) standard and instructed Plaintiff that "[w]hile the improper posting of a

---

[10] This court takes judicial notice of the documents referenced below filed in the U.S. District Court for the Northern District of Florida. Under Federal Rule of Evidence 201(b), a court may "take judicial notice of facts that are not subject to reasonable dispute because they are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999). The parties should have received copies of these documents. Regardless, the documents can be obtained from the clerk of the court. In this report and recommendation, documents filed in *Whidden I* are labeled as "ECF No. ___." Documents filed in the present case are identified as "Doc. ___."

wanted poster may give rise to claims under state law, Plaintiff fails to allege how the posting of a 'wanted poster' violates the list of federal statutes or constitutional amendments Plaintiff references in his complaint." (*Id.* at 2-3). Judge Jones instructed Whidden on various aspects of federal law and explained that Whidden had failed to state a claim for relief under section 1983. (*Id.*).

On June 28, 2017, Whidden filed his first amended complaint. (ECF. No. 6). Again, Whidden alleged that Defendants "posted and maintained under 'Color of Law' a virtual 'Wanted Poster' in the foyer of the Jackson County Court House." (*Id.* at 1). Count One of Whidden's first amended complaint alleged a federal due process claim against all defendants pursuant to section 1983 due to the "wanted posters." (*Id.* at 37).

On July 3, 2017, Judge Jones struck Whidden's first amended complaint because Whidden "failed to amend his complaint in accordance with" Judge Jones's previous order. (ECF No. 7). Judge Jones warned Whidden that he had failed to address the deficiencies in his original complaint. (*Id.*).

On July 24, 2017, Whidden filed a second amended complaint against nine Defendants, including Defendant Birge and five employees of the JCSO in their individual and official capacities. (ECF. No. 10). Count One of Whidden's second amended complaint alleged a violation of his "federal rights of due process" brought against all the defendants under section 1983 for the "unlawful, unwarranted 'Wanted Poster.'" (ECF No. 10 at 12). Whidden alleged that the "wanted poster" consisted of

the JCSO's booking photograph of Whidden. (*Id.* at 7).

On October 30, 2017, Judge Jones recommended to U.S. District Court Judge Robert L. Hinkle that Whidden's second amended complaint be dismissed for failure to state a claim upon which relief can be granted. (ECF No. 11). Judge Jones noted that Whidden's second amended complaint "center[ed] around the alleged unlawful posting of a 'wanted poster' in the foyer of the Jackson County Courthouse" which Whidden claimed "violated his federal due process and equal protection rights under 42 U.S.C. § 1983." (*Id.* at 2). Judge Jones concluded that "Despite [Whidden's] argument that the posting of his booking photograph . . . violates his right to due process . . . Plaintiff simply has not—and cannot—show that Defendants violated any of his federal statutory or constitutional rights." (*Id.* at 5).

Judge Hinkle adopted Judge Jones's report and recommendation: "The report and recommendation correctly concludes that the plaintiff has failed to state a claim under federal law on which relief can be granted. *See Paul v. Davis*, 424 U.S. 693 (1976). The federal claims must be dismissed."[11] (ECF No. 12 at 1). Judge Hinkle dismissed Whidden's claims under federal law "with prejudice." (*Id.* at 2).

---

[11] In *Paul v. Davis*, the Supreme Court held that injury to reputation alone does not implicate a liberty or property interest sufficient to invoke the procedural protection of the due process clause and that, to state a claim, an official's conduct must entail more than mere defamation. *Paul*, 424 U.S. at 712.

2.    *The Doctrine of Issue Preclusion Bars Whidden's Claim*

The doctrine of issue preclusion—sometimes known as "collateral estoppel"—"bars relitigation of an issue of fact or law that has been litigated and decided in a prior suit." *McKinnon v. Blue Cross & Blue Shield of Ala.*, 935 F.2d 1187, 1192 (11th Cir. 1991).[12] Issue preclusion "like the related doctrine of *res judicata*, has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and promoting judicial economy by preventing needless litigation." *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326 (1979) (citing *Blonder-Tongue Lab'ys., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 328-29 (1971)). "[O]nce a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Allen v. McCurry*, 449 U.S. 90, 94 (1980).

There are four prerequisites to the application of issue preclusion:

(1) the issue at stake is identical to the one involved in the prior proceeding;

(2) the issue was actually litigated in the prior proceeding;

(3) the determination of the issue in the prior litigation must have been "a critical

---

[12] "The terms 'issue preclusion' and 'collateral estoppel' have the same meaning. The use of the term 'issue preclusion,' however, has become prevalent in recent caselaw as it creates less confusion regarding its application." *Sellers v. Nationwide Mut. Fire Ins. Co.*, 968 F.3d 1267, 1272 n.3 (11th Cir. 2020) (citing *Taylor v. Sturgell*, 553 U.S. 880, 892 n.5 (2008)). Accordingly, the undersigned will utilize the phrase "issue preclusion" throughout this report and recommendation.

and necessary part" of the judgment in the first action; and

(4) the party against whom collateral estoppel is asserted must have had a full

and fair opportunity to litigate the issue in the prior proceeding.

*Christo v. Padgett*, 223 F.3d 1324, 1339 (11th Cir. 2000); *Pleming v. Universal-Rundle Corp.*, 142 F.3d 1354, 1359 (11th Cir. 1998); *Greenblatt v. Drexel*, 763 F.2d 1352, 1360 (11th Cir. 1985).

### (i).    <u>The Issue at Stake Is Identical</u>

As to the first prerequisite, an issue is considered "identical" to an issue litigated in a prior case if it was litigated in the prior case expressly or impliedly. *Powrzanas v. Jones Util. & Contracting Co.*, 822 F. App'x 926, 928 (11th Cir. 2020) (citing *In re Justice Oaks II, Ltd.*, 898 F.2d 1544, 1549-50 n.3 (11th Cir. 1990)). Furthermore, the "two cases must involve identical events or transactions; it is not enough for events or transactions to be similar in nature and close in time." *Id.* (citing *In re McWhorter*, 887 F.2d 1564, 1567-68 (11th Cir. 1989)).

The issue at stake in this case is identical to the issue in *Whidden I*. Specifically, in the instant case, Whidden alleges that Roberts—then the Sheriff of Jackson County—violated Whidden's Fourteenth-Amendment rights by posting a "wanted poster" in the Jackson County courthouse in 2015. (Doc. 58 at 15). Likewise, in *Whidden I*, Whidden alleged that Roberts and others violated Whidden's Fourteenth-Amendment rights by posting a "wanted poster" in the Jackson County courthouse in

2015. (ECF No. 10 at 6-7). In *Whidden I*, Judge Hinkle held that Whidden did not state a claim under this theory. (ECF No. 12 at 1). In support, Judge Hinkle cited *Paul v. Davis*, 424 U.S. 693 (1976) (holding that reputation alone does not implicate a liberty or property interest sufficient to invoke Due Process Clause and that something more than defamation must occur  to create a claim under section 1983). This portion of *Whidden I* involves the same transaction of events as Count Eleven of the instant litigation. The issue at stake is identical.

### (ii).    The Same Issue was Actually Litigated in the Prior Proceeding

As to the second prerequisite, an issue was actually litigated in a previous case if it was raised in the pleadings, submitted for determination, and actually determined in the prior case. *Christo*, 223 F.3d at 1339; *Pleming*, 142 F.3d at 1359; *Woodson v. Eleventh Jud. Cir. in & for Miami Dade Cnty., Fla*., 791 F. App'x 116, 119-20 (11th Cir 2019) (determining that the plaintiff's claims were actually litigated because his claims were raised, discussed and decided in a previous case). An issue can be actually litigated without a trial or evidentiary hearing ever occurring. *See In re Keaty*, 397 F.3d 264, 271 (5th Cir. 2005); *Pleming*, 142 F.3d at 1359; *Hirschfeld v. Spanakos*, 104 F.3d 16, 19 (2d Cir. 1997); *Truck Ins. Exch. v. Ashland Oil Inc*., 951 F.2d 787, 792 (7th Cir. 1992) *Jacques v. Local 1418*, 404 F.2d 703, 705-06 (5th Cir.1968) (per curiam); 18 CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 4419, at 533-34 (3d ed. 2016) (The "actually litigated" requirement "does not require introduction

of evidence or a fact hearing. Many forms of disposition on the pleadings support issue preclusion even though no evidence is offered.").

Here, the "wanted poster" issue was raised by Whidden's original complaint, first amended complaint, and second amended complaint. Judge Jones screened Whidden's original complaint, specifically determined that it did not state a claim upon which relief could be granted as to the "wanted poster" issue, and provided Whidden an opportunity to amend his complaint. When Whidden filed his first amended complaint that was substantially the same as his original complaint, Judge Jones again provided Whidden an opportunity to amend his complaint. Finally, upon receipt of Whidden's second amended complaint, the District Court determined that Whidden failed to state a claim upon which relief could be granted as to his federal due process claim and cited *Paul v. Davis*, 424 U.S. 693 (1976) (determining that reputation alone does not implicate a liberty or property interest sufficient to invoke the procedural protection of the due process clause and that something more than mere defamation by a state official must be involved to establish a claim under section 1983). Notably, Whidden did not object to Judge Jones's report and recommendation nor did he appeal the District Court's dismissal of his claims.

"A judgment in favor of either side is conclusive in a subsequent action between them on any issue actually litigated and determined, if its determination was essential to that judgment." *Cooper v. Fed. Rsrv. Bank of Richmond*, 467 U.S. 867, 874 (1984).

Accordingly, because the "wanted poster" issue was raised by the pleadings, submitted for determination, and was determined by Judge Hinkle, the issue was actually litigated.

### (iii).    <u>Critical and Necessary Part of the Prior Judgment</u>

With respect to the third element, "collateral estoppel treats as final only those questions actually and necessarily decided in a prior suit." *Brown v. Felsen*, 442 U.S. 127, 139 n.10 (1979) (first citing *Montana v. United States*, 440 U.S. 147, 153 (1979); then citing *Parklane Hosiery Co.*, 439 U.S. at 326 n.56). An issue is a necessary part of the judgment in the first action if "the disposition in the first suit was the basis for the holding with respect to the issue and not 'mere dictum.'" *McLaughlin v. Bradlee*, 803 F.2d 1197, 1204 (D.C. Cir. 1986) (first citing *Safir v. Dole*, 718 F.2d 475, 482 (D.C. Cir. 1983); then citing *Ass'n of Bituminous Contractors, Inc. v. Andrus*, 581 F.2d 853, 860 (D.C. Cir. 1978)). In analyzing this issue, typically all that is necessary is a straightforward inquiry whether a particular issue was essential to the first judgment as opposed to being merely incidental to that judgment. *McLaughlin*, 803 F.2d at 1204.

Here, Judge Hinkle's determination that Whidden failed to state a claim upon which relief can be granted—based on *Paul v. Davis*, 424 U.S. 693 (1976)—was not merely dicta and was not merely incidental to the judgment. Rather, this was an essential part of the judgment. Thus, this third prerequisite for the application of issue preclusion is also satisfied.

### (iv).  <u>Full and Fair Opportunity to Litigate the Issue</u>

As to the fourth and final prerequisite, this prerequisite is satisfied if "the losing party had a 'fair opportunity procedurally, substantively and evidentially' to contest the issue." *In re Bush*, 62 F.3d 1319, 1323 (11th Cir. 1995) (internal citations omitted). This element of issue preclusion focuses on "whether there were significant procedural limitations in the prior proceeding, whether the party had the incentive to litigate fully the issue, or whether effective litigation was limited by the nature or relationships of the parties." *SIL-FLO, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1521 (10th Cir. 1990) (citing 18 CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE & PROCEDURE § 4423, at 216-26 (1981)); *Penn Mont Sec. v. Frucher*, 502 F. Supp. 2d 443, 456-47 (E.D. Pa. 2007) ("This element of issue preclusion is most concerned with jurisdictional or procedural limitations in the prior proceeding that might have prevented the losing party from fully litigating the issue.").

Whidden had a full and fair opportunity to litigate the "wanted poster" issue in his prior litigation. As discussed above, Plaintiff was clearly notified of the deficiencies in his original complaint and first amended complaint. Moreover, Whidden was provided two opportunities to amend his complaint. Finally, Whidden did not object to Judge Jones's report and recommendation and he did not appeal the final judgment entered by Judge Hinkle. *See Kirby v. OCWEN Loan Servicing, LLC.*, 641 F. App'x 808, 810 (10th Cir. 2016) (determining the plaintiffs had a full and fair

opportunity to litigate their claims in the first suit where that claim was *sua sponte* dismissed for failure to state a claim upon which relief can be granted); *Morris v. May*, 570 F. App'x 903, 905 (11th Cir. 2014) (determining that the plaintiff had a full and fair opportunity to litigate where the plaintiff was given two opportunities to state a claim).[13]

Accordingly, because all the prerequisites for issue preclusion are satisfied, Whidden should be precluded from raising the "wanted poster" issue for a second time in the instant action. For this reason, Roberts is entitled to summary judgment on Whidden's due process claim, Count Eleven.

**D.    The District Court Should Decline to Exercise Supplemental Jurisdiction**

Whidden's four remaining claims arise under Florida law: Count Five (Negligence), Count Six (Negligent Hiring and Retention), Count Nine (Conversion), and Count Ten (Abuse of Process). The District Court should dismiss them without prejudice and thereby allow Whidden to pursue them in state court.

It is well established that once a plaintiff's federal claims are dismissed, there remains no independent federal jurisdiction to support the court's exercise of supplemental jurisdiction over any state claims against a defendant. *See Baggett v.*

---

[13] Specifically, after the plaintiff filed his § 1983 complaint, the district court adopted the magistrate judge's recommendation to dismiss the plaintiff's complaint without prejudice, allowing the plaintiff to provide additional facts supporting his claims. When the plaintiff failed to do so, the district court dismissed the plaintiff's complaint with prejudice. *Morris*, 570 F. App'x at 905.

*First Nat'l Bank of Gainesville*, 117 F.3d 1342, 1352 (11th Cir. 1997). Section 1367(c)(3) of Title 28 provides that a district court may decline to exercise supplemental jurisdiction over claims after it has dismissed all claims over which it has original jurisdiction. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 725-26 (1966). Where § 1367(c) applies, considerations of judicial economy, convenience, fairness, and comity may influence the court's discretion to exercise supplemental jurisdiction. *See Baggett*, 117 F.3d at 1353 (citation omitted). The Eleventh Circuit has encouraged district courts to dismiss any remaining state claims when the federal claims have been dismissed prior to trial. *See Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004) ("We have encouraged district courts to dismiss any remaining state claims when . . . the federal claims have been dismissed prior to trial."); *Crosby v. Paulk*, 187 F.3d 1339, 1352 (11th Cir. 1999) ("If [the district judge] decides to dismiss these state-law claims, then they should be dismissed without prejudice so that the claims may be refiled in the appropriate state court.").

Taking these factors into account in this case, the court concludes that Whidden's state claims should be dismissed to permit him to pursue them in a more appropriate forum. While it may be convenient for Whidden to continue litigating his case in this court, this court has a substantial number of original jurisdiction cases awaiting review, and neither judicial economy nor fairness to other litigants support retaining jurisdiction of Whidden's state claims and delaying justice in other cases.

Furthermore, a state court would be better equipped to research and rule on matters of state law, and comity would suggest that it should be allowed to do so. Furthermore, on two occasions, Whidden specifically requested that this case be transferred to a different court. (Docs. 119, 126).

Finally, the supplemental jurisdiction statute contains a tolling provision. *See* 28 U.S.C. § 1367(d) (state claims asserted in federal court along with "related" federal claims "shall be tolled while the claim is pending and for a period of 30 days after it is dismissed"); *Artis v. District of Columbia*, 583 U.S. __, 138 S. Ct. 594 (2018). Thus, Whidden's state claims are tolled while they are pending in federal court, and Whidden would have thirty (30) days after dismissal to re-file his state claims in state court. Therefore, the parties would not suffer prejudice from the District Court's election not to exercise supplemental jurisdiction.

## IV. CONCLUSION

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that:

1. Defendants' respective motions for summary judgment (Docs. 83 & 84) be **GRANTED IN PART** and **DENIED IN PART**.

2. The District Court grant summary judgment for the respective Defendants as to Counts One, Two, Three, Four, Eight, and Eleven.

3. The District Court decline to exercise supplemental jurisdiction and

dismiss without prejudice Whidden's remaining state law claims, namely

Counts Five, Six, Nine, and Ten.

4.      The clerk of the court close the case file.

At Panama City Beach, Florida, this <u>29th</u> day of January, 2021.

<u>/s/ Michael J. Frank</u>
**Michael J. Frank**
**United States Magistrate Judge**

## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636. The parties also are advised that if they dispute the accuracy of any facts taken from judicially-noticed documents, or if they otherwise wish to be heard on the propriety of the court taking judicial notice of those facts, they must raise this issue in an objection to this report and recommendation.**